[Civ. No. 13908.   Second Dist., Div. One.   Apr. 8, 1943.]

UNION OIL COMPANY OF CALIFORNIA (a Corporation), Respondent, v. RECONSTRUCTION OIL COMPANY (a Corporation) et al., Defendants; NATHAN NEWBY, JR., et al., Appellants.

Newby & Newby for Appellants.

Kelley & Smith, Lawrence C. Kelley and Myron E. Smith for Respondent.

YORK, P. J.—The instant action was commenced on March 30, 1942, to enforce the terms of a judgment theretofore entered, to wit, on March 22, 1935, in favor of plaintiff and against defendants, and which became final on appeal on April 2, 1937. (*Union Oil Co.* v. *Reconstruction Oil Co.,* 20 Cal.App. 2d 170 [66 P.2d 1215].)

To the complaint herein appellants filed their answer in which they denied certain allegations thereof, admitted that respondent had recovered the judgment here sued upon and alleged as special defenses:

(1) That the trial court erred as a matter of law in receiving evidence of the value of the oil and gas produced and sold by the Reconstruction Oil Company and rendering judgment for the amount thereof upon the ground that there were no allegations in the complaint asking for a money judgment as damages;

(2) That said judgment was void because the trial court erred as a matter of law in denying appellants a jury trial on the issue of damages;

(3) That these appellants received no part of the money from the sale of said gas and oil.

Respondent interposed a general demurrer to said answer which was sustained without leave to amend, whereupon judgment was entered against appellants for the sum of $25,364.51

together with interest and costs. This appeal is prosecuted from said judgment.

Appellants urge: (1) A judgment entered by the court in violation of the constitutional and statutory right of a jury trial may be collaterally attacked and its enforcement enjoined; (2) The judgment entered in the original action was void because it determined issues entirely outside the pleadings, in that the complaint therein contained no allegations of trespass or of damages; (3) The jurisdiction of courts of equity is based upon the fundamental doctrine that every wrong has a remedy.

Respondent argues that the issues raised herein are identical with those determined between the same parties in the original action (*Union Oil Co.* v. *Reconstruction Oil Co., supra*), and therefore are res judicata. Appellants counter with the argument that the fundamental basis of the decision in the original action was destroyed by the later decision of the Supreme Court in *Pacific Western Oil Co.* v. *Bern Oil Co.,* 13 Cal. 2d 60 [87 P.2d 1045] at 69, 71.

The original action was brought "to enjoin defendants from continuing the drilling of an oil well known as Hines No. 1 well which was alleged to have been located approximately 60 feet west from the southwest corner of plaintiff's lease and which in the process of drilling deviated from the vertical and entered and trespassed upon plaintiff's lease." The judgment "expressly ordered the defendants Reconstruction Oil Company, a corporation, Nathan Newby, Jr., Paul D. Newby and Felix Gillespie to plug up and abandon all of said well below a measured length of 1700 feet from the surface of the ground. The judgment further provided that the plaintiff and interveners should recover from the last-mentioned defendants the sum of $22,557.05 together with interest thereon and the costs of suit." (*Union Oil Co.* v. *Reconstruction Oil Co., supra,* pp. 173, 174.)

On appeal from said judgment, the appellate court passed upon the identical questions here presented, to wit:

"The second contention advanced by appellants is that the judgment, in so far as it awards money damages to respondent, is void for the reason that the original complaint filed in the action demanded merely injunctive relief and no supplemental pleading was ever filed which demanded compensation by way of damages. It is urged, therefore, that the trial

court was precluded from granting relief outside of the issues framed by the pleadings and that the award of damages was entirely unauthorized and beyond the court's power." (p.182.)

In passing upon this so-called second contention, the court therein stated at pages 183 and 184: "In giving consideration to the contention, it may first properly be observed that at the time the action was instituted respondent had no cause of action for damages. The well had not been placed on production and respondent had suffered no actual damage. The only relief for which respondent could then properly pray was that appellants should be restrained from causing damage in the future. This situation continued to exist until the well was placed on production during the pendency of the action. When the well began to produce oil on August 30, 1934, then for the first time a cause of action for damages accrued and admittedly at any time thereafter respondent might properly have brought an action for legal relief by way of damages. However, it is a familiar principle of equitable procedure that equity having once acquired jurisdiction of the subject matter of an action will retain it to the end that a complete determination of all conflicting rights may be had and a final determination of all matters in controversy may be accomplished. The damage suffered by respondent occurred after the suit for injunctive relief had been filed and was a matter which grew out of the situation portrayed by the allegations of respondent's complaint. It was therefore purely incidental to the relief which respondent originally sought by its equitable action and a court of equity having properly acquired jurisdiction was justified in retaining it until all issues in the action should be determined. [Citation of authorities.] . . . We conclude, therefore that, under the circumstances here presented, the trial court was not without power to make an award of damages that was purely incidental to the equitable relief originally sought and that no reversible error was committed in making such award in the absence of a supplemental complaint alleging the existence of facts which occurred subsequent to the filing of the original complaint."

On the original appeal, the court considered appellants' fifth contention "that the trial court erroneously refused their demand for a jury to try the issue of damages." In discussing this point (pp. 188, 189), the court made men-

tion of the fact that during the trial respondent demanded that the Reconstruction defendants produce records in their possession which would show the amount of money actually received from the sale of oil and gas recovered by the well; that finally after the trial court had announced its decision in favor of respondent, it ordered a further hearing be had ''for the purpose of determining the amount of production of petroleum and gas from Hines No. 1 well and the value thereof. This hearing took place on March 15, 1935, at which time the court announced that the case was being opened 'to establish the amount of damage, under the pleadings'. Appellants then renewed their objection that the inquiry proposed to be conducted was outside the issues as framed by the pleadings. This objection was overruled. Respondent thereupon offered in evidence a report prepared by a firm of auditors for the Reconstruction Oil Company . . . which showed that the total amount received by the corporation from sales of oil and gas produced by the well up to 9 o'clock a.m. of March 15, 1935, was $22,557.05. Appellants stipulated that the report was accurate and that the above-stated amount was correct but continued to object to the reception of the evidence on the ground that the question of damages was outside the issues of the case. . . . Subsequently . . . the court entered judgment whereby it was adjudged that the respondent should recover from the Reconstruction defendants the total amount which the evidence showed had been received from the sale of oil and gas produced by the well, viz.: $22,557.05. . . .

''It is our conclusion that upon the facts and circumstances of this case as they are disclosed by the record herein appellants were not entitled as a matter of right to a trial by jury of the issue of damages. The action as it was originally instituted was purely equitable in character and the relief which was sought was strictly equitable. Respondent's claim for damages arose after the suit was brought and came into existence as a result of the persistent and determined efforts of the Reconstruction defendants to complete the drilling of the well to the point of production and to continue the production of oil and gas from the well during the pendency of the action. That the trial court was fully justified from the evidence in finding that these appellants were deliberate and intentional trespassers on respondent's property and that the proper measure was applied to the question of damages are

matters which, in our opinion, may not be successfully disputed.

"It is a settled principle of equity that the right to have an issue of fact tried by jury does not exist in causes which are purely equitable in character. [Citation of authorities.] From this principle it follows that the granting or refusing of a demand for a jury trial as to some issue of fact in an action in equity is a matter which is confided to the trial court's discretion and if a jury is allowed in such a case its verdict is merely advisory to the court. [Citation of authorities.] In conformity with these established principles, it would seem proper that, in an action which is admittedly strictly equitable in character wherein the equitable relief of injunction is sought and an issue of damages is raised which is incidental to the principal issue which is whether or not an injunction shall issue, a trial by jury of the issue of damages does not exist as a matter of right and the grant or denial of a demand for a jury to try such an issue is entirely discretionary with the court."

The court then mentioned the fact that the decisions in California on this point are in conflict, cited those supporting the principle as above stated and also those to the opposite effect, concluding as follows (p. 190): "In the instant action where the facts disclosed by the record indicate that the correct measure of damages was applied by the trial court and that in our opinion a jury properly instructed and properly performing its duty could have returned no other verdict than one favorable to respondent for the precise amount which was here awarded as damages, we are constrained to follow the rule announced in the former of the two above-noted groups of decisions and to declare that no error was committed by the trial court in refusing the demand of appellants for a jury trial on the issue of damages."

From the above it can readily be seen that the decision on the first appeal, and in which a hearing was denied by the Supreme Court, is the law of the case and that appellants cannot again raise the same question which were there decided.

"The term 'law of the case' is a phrase which has been formulated to give expression to the rule that the final judgment of the highest court upon a question of law arising between the parties to an action upon a given state of facts es-

tablishes the rights of the parties to that controversy, and is a final determination thereof, and, like a final judgment in any other case, estops the parties thereto from afterwards questioning its correctness. . . . So when a case once decided and remanded for further proceedings is again brought before the court upon substantially the same facts, the court is precluded, by this doctrine of the law of the case, from reconsidering the questions of law presented and determined on the former appeal, even though it may be of the opinion that the former decision is erroneous. . . . This rule as to the law of the case on a second appeal has been established by an unbroken line of decisions commencing with *Dewey* v. *Gray* (2 Cal. 374), and has been again and again announced and applied.'' (2 Cal.Jur. 944, sec 555, citing numerous authorities.)

The doctrine of the law of the case is not affected by appellants' argument that the ruling in the first appeal is erroneous and has been overruled by the later decision in the case of *Pacific Western Oil Co.* v. *Bern Oil Co.*, 13 Cal. 2d 60, 71 [87 P.2d 1045]. ''Right or wrong, it must be regarded as a final adjudication of the court and the law of the case when the case comes up on second appeal on the same facts. Indeed, it is when the former rule is deemed erroneous that the doctrine of the law of the case becomes most important.'' (2 Cal. Jur. 956, sec. 561 and authorities there cited.)

As was so aptly stated in the case of *Sontag Chain Stores Co.* v. *Superior Court*, 18 Cal.2d 92, 94 [113 P.2d 689] : ''It is well settled that a final judgment of a court of competent jurisdiction may not be impeached collaterally for mere errors or irregularities committed by the court in the exercise of its jurisdiction or in the course of the proceedings, even though the error is one of law and appears on the face of the record, (31 Am.Jur., sec.583,pp.181, et seq.) and it has frequently been declared that a judicial decree will not be set aside by reason of a change of law resulting from a subsequent decision by a higher court reaching a contrary conclusion. (95 A.L.R., note, pp.708, et seq.) The reason for the rule is that there must be an end to litigation, and hence it is the long established policy of the law to, so far as possible, prohibit the further contest of an issue once judicially decided and to accord finality to judgments.''

The latest case in which the finality of a determination is

passed upon in California is the case of *Panos* v. *Great Western Packing Company*, 21 Cal.2d 636 [134 P.2d 242] decided on February 23, 1943.

For the reasons stated, the judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 3, 1943.