CINDY ANDERSON, APPELLEE, V. HMO NEBRASKA, INC., APPELLANT.

505 N.W.2d 700

Filed September 24, 1993.   No. S-92-489.

John F. Thomas and Ronald Fleming, of McGrath, North, Mullin & Kratz, P.C., for appellant.

Terry M. Anderson and Steven M. Lathrop, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

Asserting that the defendant-appellant, HMO Nebraska, Inc., a health maintenance organization (HMO), wrongfully denied benefits due her, the plaintiff-appellee, Cindy Anderson, seeks a declaration under the Uniform Declaratory Judgments Act, Neb. Rev. Stat. § 25-21,149 et seq. (Reissue 1989), that the HMO must authorize and pay for the prophylactic surgical removal of her breasts and reconstructive procedures she seeks to undergo. In so doing, Anderson invokes the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. (1988 & Supp. II 1990), as well as state contract and tort theories. After first dismissing the state claims as preempted by ERISA, the district court concluded that the HMO is obligated under federal law to authorize and pay for the treatments Anderson seeks, and thus granted Anderson's prayer. The Nebraska Court of Appeals affirmed that declaration, whereupon the HMO successfully petitioned for further review. We reverse the judgment of the Court of Appeals on jurisdictional grounds, and remand with direction.

The employer of Anderson's husband offers its employees and their dependents a choice of four health care schemes, including the one the husband selected, the coverage provided by the HMO. Under each of the four schemes, the employee pays a portion of the cost of the scheme selected, and the employer pays the remainder.

The "Health Maintenance Service Contract" between the HMO and the employer generally obligates the HMO to provide for Anderson's health care needs. However, excluded from that obligation are, among other things, treatments which are not medically necessary. The HMO is empowered by the contract to determine medical necessity, which the document defines as consisting of those services, treatments, or supplies which are appropriate and consistent with the symptoms and

diagnosis or treatment of the patient's illness, are in accordance with the standards of good medical practice in this state and could not be omitted without adversely affecting the patient's condition, and are most cost effective.

Without determining how much of the evidence may be relevant to an ultimate resolution on the merits, we note for the limited purpose of setting the background for this review that there is evidence that Anderson has developed fibrous tissue in her breasts, making the uncovering of cancer more difficult; that she has an extensive family history of breast cancer; and that she is obsessively apprehensive that she will develop the disease. There is also evidence that continued surveillance to detect the development of cancer is an alternative treatment. The HMO takes the position that as Anderson does not presently suffer from the malady, the surgeries and procedures she seeks are not medically necessary.

ERISA regulates " 'employee welfare benefit plan[s],' " which are defined, insofar as is pertinent to this review, as any "plan, fund, or program . . . established or . . . maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . medical, surgical, or hospital care or benefits." § 1002(1). The plan is to include an appeal procedure to review denied claims, 29 C.F.R. § 2560.503-1(g) (1992), and the act directs plan fiduciaries to discharge their duties in accordance with the governing plan documents and instruments solely in the interest of the participants and beneficiaries, § 1104(a)(1). To help reduce the number of frivolous lawsuits, promote the consistent treatment of claims, provide a nonadversarial method of settling claims, and minimize the cost of settling claims, under most circumstances the review procedure specified in the plan must be exhausted as a precondition to the institution of suit. *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897 (11th Cir. 1990); *Zipf v. American Tel. & Tel. Co.*, 799 F.2d 889 (3d Cir. 1986); *Kross v. Western Elec. Co., Inc.*, 701 F.2d 1238 (7th Cir. 1983); *Amato v. Bernard*, 618 F.2d 559 (9th Cir. 1980).

To the extent relevant to this review, the act supersedes "any and all State laws insofar as they may now or hereafter relate to

any employee benefit plan . . . ." § 1144(a). ERISA has therefore preempted state law with respect to actions brought to clarify rights to benefits or to enforce rights arising under a plan coming within the purview of ERISA. E.g., *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990) (wrongful discharge claim); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987) (action for bad faith denial of benefits under plan); *Memorial Hosp. System v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990) (derivative claims for benefits assigned to a health care provider asserting breach of contract and state statute); *Baxter By and Through Baxter v. Lynn*, 886 F.2d 182 (8th Cir. 1989) (state common-law rules of subrogation); *Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir. 1988), *cert. denied* 488 U.S. 826, 109 S. Ct. 76, 102 L. Ed. 2d 52 (breach of contract and promissory estoppel); *Anderson v. John Morrell & Co.*, 830 F.2d 872 (8th Cir. 1987) (breach of contract). However, not every claim touching upon employee benefits has been preempted by ERISA. See *Hospice of Metro Denver v. Group Health Ins.*, 944 F.2d 752, 756 (10th Cir. 1991) (state promissory estoppel claim by a health care provider against an insurance company providing health care coverage to an ERISA plan not preempted, since it "[did] not affect the 'relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries, and the beneficiaries' as such").

A participant in or beneficiary of an ERISA-regulated plan may seek to enforce her or his benefits and rights thereunder by instituting a civil action in either the state or federal courts. § 1132(a)(1)(B) and (e)(1). The courts are to develop a federal common law of rights and obligations under ERISA-regulated plans. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). Thus, even in ERISA claims tried in state courts, the federal substantive ERISA common law controls. See *Hammond v. Fidelity and Guar. Life Ins. Co.*, 965 F.2d 428 (7th Cir. 1992).

But "[c]oncurrent jurisdiction is vested in the state courts *only* with respect to a civil action commenced by a participant or beneficiary seeking to recover or clarify rights to benefits 'under the terms of the plan,' or to enforce rights 'under the

terms of the plan.' " (Emphasis in original.) *Duffy v. Brannen*, 148 Vt. 75, 84, 529 A.2d 643, 648 (1987).

Thus, the difficulty in reviewing this matter on the merits arises from the circumstance that although the record contains the contract between the HMO and the employer, it does not contain or otherwise establish the relevant terms of any employee welfare benefit plan. Even if we accept the notion that the existence of the health care scheme furnished through the HMO, coupled with the fact that the husband's employer contributes toward the cost of the coverage the HMO extends to the husband and his dependents, establishes that the employer provides an ERISA-regulated employee welfare benefit plan of some sort, see *Memorial Hosp. System v. Northbrook Life Ins. Co., supra,* the fact that the employer offers four health care schemes convinces us that the contract between the employer and the HMO does not represent the entire plan.

The terms of any such plan are crucially important, for without them we cannot determine if or how the denial of Anderson's claim affects the relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries, and the beneficiaries of the plan. See *Hospice of Metro Denver v. Group Health Ins., supra.* More specifically, it is the terms of the plan which establish the standard by which the HMO's decision is to be judged. This is so because in the course of considering a claim for severance benefits, the U.S. Supreme Court reasoned that due to the legislative history surrounding ERISA and the many references in the act to the language and terminology of trust law, where the plan explicitly grants the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the correctness of the administrator's or fiduciary's determinations is to be reviewed under an abuse of discretion standard; otherwise, the correctness of the determinations is to be reviewed de novo. *Firestone Tire & Rubber Co. v. Bruch, supra.* But see *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552 (5th Cir. 1991), *cert. denied* ____ U.S. ____, 112 S. Ct. 453, 116 L. Ed. 2d 470 (holding that in contrast with interpretations of plan terms, fiduciary's factual determinations always to be reviewed under abuse of discretion standard).

We are mindful that a number of decisions hold that an insurer providing coverage for employee welfare benefits, having discretionary authority to either determine the eligibility for benefits or construe the terms of the plan, is a plan fiduciary, at least for the purpose of having its decisions reviewed under an abuse of discretion standard. E.g., *Anderson v. Blue Cross/Blue Shield of Alabama*, 907 F.2d 1072 (11th Cir. 1990); *Newell v. Prudential Ins. Co. of America*, 904 F.2d 644 (11th Cir. 1990); *Brown v. Blue Cross & Blue Shield of Alabama*, 898 F.2d 1556 (11th Cir. 1990), *cert. denied* 498 U.S. 1040, 111 S. Ct. 712, 112 L. Ed. 2d 701 (1991); *Schnitker v. Blue Cross/Blue Shield of Nebraska*, 787 F. Supp. 903 (D. Neb. 1991); *Bass v. Prudential Ins. Co. of America*, 764 F. Supp. 1436 (D. Kan. 1991); *Bucci v. Blue Cross-Blue Shield of Connecticut*, 764 F. Supp. 728 (D. Conn. 1991). But we are also aware of other decisions which hold that such insurers do not necessarily become fiduciaries merely by deciding whether to pay a claim. E.g., *Ellington v. Metropolitan Life Ins. Co.*, 696 F. Supp. 1237 (S.D. Ind. 1988); *Jordan v. Reliable Life Ins. Co.*, 694 F. Supp. 822 (N.D. Ala. 1988); *Anderson v. Alpha Portland Industries, Inc.*, 647 F. Supp. 1109 (E.D. Mo. 1986), *aff'd* 836 F.2d 1512 (8th Cir. 1988), *cert. denied* 489 U.S. 1051, 109 S. Ct. 1310, 103 L. Ed. 2d 579 (1989); *McLaughlin v. Connecticut General Life Ins. Co.*, 565 F. Supp. 434 (N.D. Cal. 1983); *Austin v. General American Life Ins. Co.*, 498 F. Supp. 844 (N.D. Ala. 1980).

As noted in *Austin*:

General American claims in its brief, without evidence, that it is to be considered as a fiduciary of the plan within the meaning of 29 C.F.R. § 2560.5021(g)(2). Accordingly, complaints against it would be claims for breach of fiduciary duties subject to federal court jurisdiction for not only Count I, but Counts II and III as well. The cited regulation states in substance that, where benefits under an ERISA plan are provided or administered by an insurance company, the plan may specify that such company be responsible for review of decisions on denied benefit claims, in which event the insurer will be treated as an ERISA fiduciary. The language of the regulation

demonstrates that the insurance company is not necessarily a fiduciary by reason of providing contractual benefits, but rather is to be so considered if it, in addition, is given responsibility for reviewing *denied* claims. Not every insurer is a fiduciary for the purposes of ERISA; nor is it the case that merely by deciding whether to pay claims submitted by insureds the insurer is thereby subjected to the responsibilities of a fiduciary. The regulation relied on by General American makes it clear that the status of an insurer as a fiduciary is not automatic but rather turns upon the provisions of the plan and of the agreement made by the insurer.

    The defendants present no evidence to the effect that General American is charged with review of denied claims or is otherwise accountable as a fiduciary under ERISA.

(Emphasis in original.) 498 F. Supp. at 846. The regulation to which the *Austin* court refers is actually § 2560.503-1(g), mentioned earlier in this opinion. It reads in part:

    *Review procedure.* (1) Every plan shall establish and maintain a procedure by which a claimant or his duly authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary or to a person designated by such fiduciary, and under which a full and fair review of the claim and its denial may be obtained. Every such procedure shall include but not be limited to provisions that a claimant or his duly authorized representative may:

    (i) Request a review upon written application to the plan;

    (ii) Review pertinent documents; and

    (iii) Submit issues and comments in writing.

    (2) To the extent that benefits under an employee benefit plan are provided or administered by an insurance company, insurance service, or other similar organization which is subject to regulation under the insurance laws of one or more States, the claims procedure pertaining to such benefits may provide for review of and decision upon denied claims by such company, service or organization. In such case, that company, service, or organization shall

be the "appropriate named fiduciary" for purposes of this section. In all other cases, the "appropriate named fiduciary" for purposes of this section may be the plan administrator or any other person designated by the plan, provided that such plan administrator or other person is either named in the plan instrument or is identified pursuant to a procedure set forth in the plan as the person who reviews and makes decisions on claim denials.

The purpose of the section is to set out minimum requirements for employee benefit plans. § 2560.503-1(a).

We find the reasoning of *Austin* persuasive and thus adopt the view that one providing contractual health care benefits is not, by virtue of that reason alone, necessarily a fiduciary. Rather, an insurance company, insurance service, or other similar organization providing or administering health care benefits subject to regulation under the laws of one or more states is the "appropriate named fiduciary" for the review of denied claims only if so named in the ERISA plan; otherwise, that responsibility goes by default, if no other entity is named, to the plan administrator. § 2560.503-1(g).

Further, we note that § 1132(a)(1)(B) provides that a participant or beneficiary may file a civil suit to, among other things, recover benefits due under the terms of the plan. Section 1132(d) provides that a plan may sue or be sued as an entity and that any money judgment against a plan is enforceable against only the plan as an entity and not against any other person unless liability is established against such person in his or her individual capacity. Thus, ERISA permits suits to recover benefits against only the plan as an entity and suits for breach of a fiduciary duty against only the fiduciary. *Holland v. Bank of America*, 673 F. Supp. 1511 (S.D. Cal. 1987). See, also, *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323 (9th Cir. 1985); *Miller v. Pension Plan for Emp. of Coastal Corp.*, 780 F. Supp. 768 (D. Kan. 1991), *aff'd* 978 F.2d 622 (10th Cir. 1992), *cert. denied* ____ U.S. ____, 113 S. Ct. 1586, 123 L. Ed. 2d 152 (1993); *Jordan v. Reliable Life Ins. Co.*, 694 F. Supp. 822 (N.D. Ala. 1988).

While, as established earlier, we are obligated to apply the federal substantive ERISA common law, we are free to apply

our own procedural law.

In considering a like question in the context of the Federal Employers' Liability Act, which also grants the states concurrent jurisdiction, the U.S. Supreme Court, in *St. Louis Southwestern R. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S. Ct. 1347, 84 L. Ed. 2d 303 (1985), wrote: "As a general matter, FELA cases adjudicated in state courts are subject to state procedural rules, but the substantive law governing them is federal." An application of that rule is found in *Chapman v. Union Pacific Railroad*, 237 Neb. 617, 622, 467 N.W.2d 388, 393 (1991), wherein we wrote:

> Courts of the United States and courts of the several states have concurrent jurisdiction over claims controlled by the Federal Employers' Liability Act. 45 U.S.C. § 56. In disposing of a claim controlled by the Federal Employees' Liability Act, a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act . . . .

Accordingly, we hold that the courts of this state shall not exercise subject matter jurisdiction in an action brought under ERISA unless (1) the plan fiduciary is named as a party, (2) the record establishes the relevant provisions of the employee welfare benefit plan under which benefits are sought, and (3) the record establishes as well that either (a) the administrative claim resolution procedures under the terms of the plan have been exhausted or (b) there exists an excuse for not exhausting such procedures.

Here, the record recites that although the employer administers "employee benefits including health insurance benefits," it "does not administer any of the employee claims for health care benefits." The record also recites that upon a telephone inquiry on behalf of one of Anderson's physicians, the HMO advised that the information so communicated did not reveal a medical necessity for the surgeries and procedures sought and asked for written documentation of Anderson's condition. After receiving that information, the HMO refused to authorize the surgeries and procedures. Whatever the aforesaid recitations in the record may suggest, they fall far short of establishing that the HMO acted in any capacity other

than as a contractual provider of health care coverage determining for its own purposes the extent of its contractual obligation. In other words, the record fails to establish that the HMO either had the authority to review or did in fact review a denied claim in the sense contemplated by § 2560.503-1(g), and thus became a fiduciary.

We recognize that neither of the parties hereto has questioned the district court's jurisdiction under ERISA. But lack of subject matter jurisdiction may be raised sua sponte by a court. *Armstrong v. Higgins*, 241 Neb. 833, 491 N.W.2d 331 (1992). Furthermore, it is axiomatic that the parties cannot confer subject matter jurisdiction upon a judicial tribunal by either acquiescence or consent. Neither may subject matter jurisdiction be created by waiver, estoppel, consent, or conduct of the parties. *Mid-America Pipeline Co. v. Boehm, ante* p. 220, 506 N.W.2d 41 (1993); *JEMCO, Inc. v. Board of Equal. of Box Butte Cty.*, 242 Neb. 361, 495 N.W.2d 44 (1993).

For the foregoing reasons, the district court erroneously exercised its ERISA subject matter jurisdiction. Accordingly, we hereby reverse the judgment of the Court of Appeals and remand the cause to that court with the direction that it remand the cause to the district court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED WITH DIRECTION.